**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Donald Whitten</u>

    v.                                             Civil No. 09-cv-450-SM

<u>Larry Blaisdell, Warden,
Northern New Hampshire
Correctional Facility et al.</u>[1]

**REPORT AND RECOMMENDATION**

Before the court is Donald Whitten's Complaint (doc. no. 1), alleging that the defendants, all employees of the New Hampshire Department of Corrections ("DOC"), have violated his rights under the Eighth Amendment by denying him adequate medical treatment, including medication for back pain and treatment for chest pain.[2] As Whitten is a prisoner at the Northern New Hampshire

---

[1] In addition to Larry Blaisdell, Northern New Hampshire Correctional Facility Warden, Whitten has named the following defendants to this action in their individual and official capacities: William Wrenn, New Hampshire Department of Corrections ("DOC") Commissioner; Robert MacLeod, DOC Medical Director; Dr. Celia Englander, DOC physician; Dr. Eppolito, DOC physician; and Judy Baker, DOC Nurse Practitioner.

[2] In the Complaint, Whitten has specifically requested a preliminary injunction, in addition to damages and other relief. I have construed this request as a motion for preliminary relief under Fed. R. Civ. P. 65(a), which requires notice to the adverse party. A hearing on the motion will be scheduled upon notice to defendants in a separate order to be issued by the court.

Correctional Facility ("NCF"), the matter is before me for preliminary review to determine whether or not the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court, District of New Hampshire, Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review. In a preliminary review, pro se pleadings are construed liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and

meaningful consideration.

To determine if a pleading filed pro se should be dismissed for failing to state a claim on which relief could be granted, the Court must consider whether the allegations, construed liberally, Erickson, 551 U.S. at 94, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if the pleadings state a viable claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

### Background

Whitten was in an accident in the 1990s. In the years since the accident, Whitten has suffered chronic pain. Whitten has

been on pain medication and has undergone magnetic resonance imaging ("MRI") twice. The MRIs have revealed serious back problems requiring surgery.

Since becoming incarcerated at NCF in September 2008, Whitten has suffered from chest pain. Whitten attributes the chest pain to heart problems.

In 2008, Whitten met with Dr. Celia Englander, a DOC physician. Whitten told her about his chronic pain and asked her to review his medical history. Englander refused to provide adequate pain medication to Whitten. In addition, Englander has refused to treat Whitten's chest pain, which he characterizes as severe.

In the last two years, Whitten has had a number of appointments with Dr. Eppolito, the "Pain Management Doctor" at NCF, and Judy Baker, a DOC nurse practitioner. Both have refused to prescribe adequate pain medication for him. In addition, Whitten has asked Baker to refer him for an outside consultation to evaluate his complaints of chronic pain, but Baker has refused to make the referral.

Whitten's pain medication has recently been "up graded," but the change has been insufficient. Despite the change in his

medication, Whitten continues to suffer great pain.

Whitten has filed a number of requests for assistance or grievances while at NCF regarding his allegations of inadequate medical care. Whitten's requests filed with Warden Larry Blaisdell and Medical Director Robert MacLeod have resulted in directives from them to "see medical" or "go to sick call." Whitten's grievances filed with Commissioner William Wrenn have yielded no response at all. Most of Whitten's requests or grievances have not been delivered to their intended recipient for reasons not specified by Whitten.

Construed liberally, the complaint (doc. no. 1) includes the following federal civil rights claims against the defendants specified below[3]:

1. Dr. Englander provided inadequate medical care for

---

[3] Whitten makes a passing reference to the current size of the prison population at NCF, which, he alleges, exceeds its capacity by more than 50%. Whitten has not alleged any facts, however, suggesting that the NCF excess population has caused "deprivations of essential food, medical care, or sanitation," or otherwise created "conditions intolerable for prison confinement," denying him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). In addition, Whitten has alleged no facts with respect to the prison officials' state of mind regarding these conditions. Therefore, any prison overcrowding claim intended to be included in the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

5

Whitten's serious medical needs, in violation of his rights under the Eighth Amendment, by failing to provide him with adequate treatment for his severe chest pain relating to heart problems.

2.   Dr. Englander, Dr. Eppolito, and Nurse Practitioner Baker provided inadequate medical care for Whitten's serious medical needs, in violation of his rights under the Eighth Amendment, by failing to provide him with adequate pain medication or other adequate treatment for chronic pain relating to his back condition.

3.   Defendants MacLeod, Blaisdell, and Wrenn are each liable for refusing to intervene to ensure that the DOC medical staff provides Whitten with adequate medical care, consistent with Whitten's Eighth Amendment rights.

4.   Whitten has suffered a deprivation of his constitutional right to access the DOC grievance procedure because most of his requests and grievances do not reach their intended recipients.

## Discussion

I.   Section 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional

or statutory law.  See 42 U.S.C. § 1983[4]; Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Because Whitten's claims allege violations of federal constitutional law effected by state actors, his suit arises under § 1983.

II.  Official Capacity Claims & Eleventh Amendment

"[I]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action."  Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009) (internal quotation marks and citation omitted).  The Eleventh Amendment bars retrospective actions for damages under section 1983 against an unconsenting state, state agency, or state officers acting in their official capacity.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither state nor agencies under its control may be subject to suit in federal

---

[4] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

7

court); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989) (Congress did not abrogate state's Eleventh Amendment immunity under section 1983 (citing <u>Quern v. Jordan</u>, 440 U.S. 332 (1979)).

New Hampshire has not waived its sovereign immunity for damage claims asserted under 42 U.S.C. § 1983. Accordingly, the claims against defendants in their official capacities should be dismissed under the Eleventh Amendment, leaving only the claims asserted against defendants in their individual capacities.

III. <u>Inadequate Medical Care</u>

"The Eighth Amendment, applicable to the States through the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." <u>Kennedy v. Lousiana</u>, ___ U.S. ___, ___, 128 S. Ct. 2641, 2649 (2008). The Eighth Amendment protects state prison inmates from prison officials acting with deliberate indifference to their serious medical needs. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994).

To assert a viable cause of action for inadequate medical care, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical

need.  Id.; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege "deliberate indifference," that is, the responsible prison official's awareness of the serious medical need (or the facts from which the need could be inferred), and his or her failure to provide adequate treatment.  See id.

A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that

the care must meet minimal standards of adequacy.  See Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) ("when a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation" (citations, internal alterations, and quotation marks omitted)).  "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007)

To be found deliberately indifferent, "a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. (internal quotation marks and citation omitted).  Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'"  Id. (citation omitted).  Deliberate indifference may be found where the medical care

provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. See Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Here, Whitten has alleged facts showing that his chronic pain relating to his back problems and his chest pain attributable to heart problems present serious medical needs requiring treatment. Furthermore, Whitten has alleged facts sufficient to show that Englander, Eppolito, and Baker failed to provide him with sufficient medication or other adequate treatment for his chronic pain, causing him to suffer severe pain. Additionally, as to Englander, Whitten has alleged sufficient facts to demonstrate that she failed to provide treatment for chest pain relating to a heart problem, giving rise to a substantial risk of serious harm to Whitten. Finally, Whitten's allegations as to the deliberate indifference of these medical providers, in light of his complaints of chronic, debilitating pain relating to his back problem or chest pain

11

relating to his heart problems, is sufficient at this stage to state a claim for a violation of the Eighth Amendment as to each of them.  Accordingly, in an Order issued this date, I have directed service of Whitten's Eighth Amendment claims against Englander, Eppolito, and Baker.

III. <u>Supervisory Liability</u>

Jail officials have an obligation under the Eighth Amendment to protect inmates from prison officials acting with deliberate indifference to their serious medical needs.  <u>See</u> <u>Farmer</u>, 511 U.S. at 831; <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992).  Mere knowledge of the constitutional misdeeds of a subordinate does not, without more, give rise to a supervisor's liability for that conduct in a § 1983 action, where the underlying constitutional violation requires proof of the subordinate's purposeful action. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949 (discussing contours of liability for officials charged with Equal Protection violations arising from superintendent responsibilities).  The First Circuit, following <u>Iqbal</u>, has stated that:

> [S]upervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation.  Further, supervisory liability under a

12

>               theory of deliberate indifference will be found
>               only if it would be manifest to any reasonable
>               official that his conduct was very likely to
>               violate an individual's constitutional rights.

<u>Maldonado v. Fontanes</u>, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotations and citations omitted).  A supervisor is not deliberately indifferent, for purposes of § 1983 liability, if he or she is alleged merely to have been present for, or otherwise obtains knowledge of, the wrongdoing of a subordinate, or if the supervisor promulgated a policy that does not direct or condone the wrongful conduct of subordinates.  <u>Id.</u>

   Whitten alleges that, by utilizing the DOC grievance process, he alerted defendants MacLeod, Blaisdell, and Wrenn to the inadequacies in his medical care.  Whitten alleges that these defendants, as supervisors for the medical staff directly responsible for providing his inadequate medical care, were more than merely aware of the inadequacies in his medical treatment.  These supervisors, by virtue of being the decision makers in the grievance process, are charged with the obligation, and given the concomitant opportunity, to remedy the medical staff's failure to provide adequate medical care.  This is particular true where, as here, the supervisors' failure to remedy or correct the denial of adequate medical care could be reasonably understood by the

medical providers to amount to condonation of their failure to provide treatment.  Where, as here, the issue is denial of medical care for a medical condition, and pain and other serious problems that are ongoing, supervisory approval of the medical staff's actions can be understood to lead inexorably to a continuing or future violation of an inmate's right to adequate medical care.  See id.

Whitten states that he grieved the inadequacy of his medical treatment to MacLeod, to Blaisdell, and then on to Wrenn.  These supervisory officials, by doing nothing, led Whitten to continue to receive inadequate medical care.  Accordingly I find that, for purposes of preliminary review, Whitten has stated claims against the supervisory defendants for their deliberate indifference to, and denial of adequate medical care for, his serious medical needs.

IV.  Denial of Grievance Procedures

Whitten has alleged that his grievances and requests for assistance do not always reach their intended recipient.  I have liberally construed this allegation as intending to state a claim that he has suffered a deprivation of his right to petition the government for a redress of grievances.  In general, there is no

14

constitutional right to the existence of grievance procedures. See Lim v. Stanley, 2005 WL 1712202, *4 n.13 (D.N.H. 2005); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Nevertheless, the right to use established administrative grievance procedures in a prison context is protected by the constitutional right to petition the government for a redress of grievances.  See Hudson v. Palmer, 468 U.S. 517, 523 (1984); Sprouse v. Babcock, 870 F.2d 450, 452 (8th cir. 1989); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988).

Whitten's charge of a denial of access to grievance procedures here is purely speculative.  Whitten has specifically alleged that Blaisdell and MacLeod responded to his grievances regarding medical care, albeit not as he would have liked.  His allegations regarding Wrenn's failure to reply provide no basis for more than speculation that his grievances were not processed in accordance with established procedures.  No officer responsible for any breach of procedure amounting to a denial of access to the grievance system has been identified.  Accordingly, I recommend dismissal of this claim.

## Conclusion

For reasons set forth more fully above, I recommend

15

dismissal of all claims asserted against the defendants in their official capacities.  In addition, any claim alleging constitutional violations relating to prison overcrowding or a denial of access to grievance procedures should be dismissed. The remaining claims asserted under 42 U.S.C. § 1983, alleging inadequate medical care and supervisory liability, may proceed against the defendants in their individual capacities.  Service of these remaining claims on the defendants is directed in an Order issued this date.

The identification of the claims in this Report and Recommendation will be considered in this case to be the claims raised in the Complaint (doc. no. 1) for all purposes.  If the plaintiff disagrees with this identification, the plaintiff must file an objection within fourteen (14) days of receipt of this notice, or properly move to amend the Complaint.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir.

1986).

                                         _____
                                         James R. Muirhead
                                         United States Magistrate Judge

Date: January 22, 2010

cc:   Donald C. Whitten, pro se

JRM:nmd

17